JUDGE SWAIN

12 CIV 5124

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GEORGE G. SCOTT, Individually and on Behalf of All
Others Similarly Situated,

           Plaintiff,

    vs.

GENERAL MOTORS COMPANY, EDWARD E.
WHITACRE, JR., CHRISOPHER P. LIDDELL, NICK
S. CYPRUS, DANIEL F. AKERSON, DAVID
BONDERMAN, ERROLL B. DAVIS, JR., STEPHEN J.
GIRSKY, E. NEVILLE ISDELL, ROBERT D. KREBS,
PHILIP A. LASKAWAY, MORGAN STANLEY & CO.
INCORPORATED, J.P. MORGAN SECURITIESS LLC,
MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, CITIGROUP GLOBAL MARKETS
INC., BARCLAYS CAPITAL INC., CREDIT SUISSE
SECURITIES (USA) LLC, DEUTSCHE BANK
SECURITIES INC.,  GOLDMAN, SACHS & CO., RBC
CAPITAL MARKETS CORPORATION, BANCO
BRADESCO BBI S.A., CIBC WORLD MARKETS
CORP., COMMERZ MARKETS LLC, BNY MELLON
CAPITAL MARKETS, LLC, ICBC INTERNATIONAL
SECURITIES LIMITED, ITAU BBA USA
SECURITIES, INC., LLOYDS TSB BANK PLC,
CHINA INTERNATIONAL CAPITAL
CORPORATION HONG KONG SECURITIES
LIMITED, LOOP CAPITAL MARKETS LLC, THE
WILLIAMS CAPITAL GROUP, L.P., SOLEIL
SECURITIES CORPORATION, SCOTIA CAPITAL
(USA) INC., PIPER JAFFRAY & CO., SMBC NIKKO
CAPITAL MARKETS LIMITED, SANFORD C.
BERNSTEIN & CO., LLC, CASTLEOAK
SECURITIES, L.P., C.L. KING & ASSOCIATES, INC.,
FBR CAPITAL MARKETS & CO., GARDNER RICH,
LLC, LEBENTHAL & CO., LLC, MURIEL SIEBERT
& CO., INC., SAMUEL A. RAMIREZ & COMPANY,
INC., CABRERA CAPITAL MARKETS, LLC, and CF
GLOBAL TRADING LLC,

           Defendants.

Civil Action No.:

RECEIVED
JUN 29 2012
U.S.D.C. S.D. N.Y.
CASHIERS

<u>CLASS ACTION</u>

**COMPLAINT FOR**
**VIOLATION OF THE**
**FEDERAL SECURITIES**
**LAWS**

<u>JURY TRIAL DEMANDED</u>

Plaintiff George G. Scott ("Plaintiff" or "Scott"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.  Plaintiff's information and belief is based upon, the investigation of Plaintiff's counsel, including the review and analysis of U.S. Securities and Exchange Commission ("SEC") filings by General Motors Company ("GM" or the "Company"), news articles and other publicly available information concerning the Defendants named herein.

## NATURE OF THE ACTION

1.     This is a securities class action on behalf of all purchasers of the common stock of GM pursuant in or traceable to the Company's November 18, 2010 initial public offering (the "IPO" or the "Offering") pursuant to the Securities Act of 1933 (the "Securities Act").

2.     Defendants made materially false and misleading statements, and failed to make subsequent disclosures to make the earlier statements not misleading, related to GM having strong inventory controls in place at the time of the IPO.

3.     In connection with the IPO, and in order to assuage concerns that GM was predicting revenue based on production rather than actual sales, GM falsely assured investors that it was actively managing its production by monitoring its dealer inventory levels. Additionally, GM assured investors that in 2011 it would improve inventory management, which would improve average transaction price.

4.     These statements were false when made.  In July 2011, reports began to surface that GM had engaged in an extraordinary inventory build-up.  In particular, an article published by *Bloomberg* on July 5, 2011 revealed that GM may have been unloading excessive inventory on dealers, a practice known as "channel stuffing," in order to create the false impression that GM was recovering and sales and revenues were rising.  The *Bloomberg* article stated that GM's

truck inventory swelled to 122 days worth of average sales whereas, by comparison, GM's less profitable car inventory was limited to 60 to 70 days of average sales, Ford was maintaining only a 79 day inventory on comparable trucks, and GM's truck inventory during the years 2002-2010 had similarly averaged only 78 days of average sales.   By November 2011, GM dealer inventories were 30% higher than they were on September 30, 2010 (the end of the last full quarter before the November 18, 2010 IPO) and 62% higher than they were at the end of 2009.

5.      During the three months following the *Bloomberg* article, GM's share price fell from more than $31.00 to below $20.00, far below the IPO price of $33.00, and continues to trade around $20.00 today.

6.      Plaintiff is asserting non-fraud prospectus liability claims under Sections 11, 12(a)(2) and 15 of the Securities Act of 1933 on behalf of purchasers of GM stock in or traceable to the November 18, 2010 IPO.

**JURISDICTION AND VENUE**

7.      The claims asserted herein arise under and pursuant to Sections 11, 12(a)(2) and 15 of the Securities Act [15 U.S.C. §§ 77k, 77l and 77o].

8.      This Court has subject matter jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and 28 U.S.C. § 1331.

9.      This court has personal jurisdiction over the Defendants pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), because they transact business and/or have offices in this District.

10.     Venue is proper in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and 28 U.S.C. § 1391(a), (b), and (c) because certain of the transactions, acts,

practices and courses of conduct constituting violations of the federal securities laws occurred within this District and the Defendants transact business in this District.

11.      In connection with the acts and conduct alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and telephonic communications and the facilities of the New York Stock Exchange ("NYSE"), a national securities market.

## PARTIES

12.      Plaintiff Scott is an adult residing in the State of Florida.  He purchased GM common stock in the IPO, as described in the attached certification, and suffered damages as a result of Defendants' violations of the federal securities laws described herein.

13.      Defendant GM is incorporated under the laws of the Delaware, with its corporate headquarters at 300 Renaissance Center, Detroit, Michigan.

14.      Defendant Edward E. Whitacre, Jr. was Chairman of the Board of GM at the time of the IPO and signed the Prospectus filed by GM with the SEC on Form 424B1 on November 18, 2010 (the "Prospectus").

15.      Defendant Christopher P. Liddell was Vice Chairman of the Board and Chief Financial Officer at GM at the time of the IPO and signed the Prospectus.

16.      Defendant Nick S. Cyprus was Vice President, Controller and Chief Accounting Officer at GM at the time of the IPO and signed the Prospectus.

17.      Defendant Daniel F. Akerson was the Chief Executive Officer at GM at the time of the IPO and signed the Prospectus.

18.      Defendant David Bonderman was a Director of GM at the time of the IPO and signed the Prospectus.

19.    Defendant Erroll B. Davis, Jr. was a Director of GM at the time of the IPO and signed the Prospectus.

20.    Defendant Stephen J. Girsky was a Director of GM at the time of the IPO and signed the Prospectus.

21.    Defendant E. Neville Isdell was a Director of GM at the time of the IPO and signed the Prospectus.

22.    Defendant Robert D. Krebs was a Director of GM at the time of the IPO and signed the Prospectus.

23.    Defendant Philip A. Laskaway was a Director of GM at the time of the IPO and signed the Prospectus.

24.    Defendants Whitcare, Liddell, Cyprus, Akerson, Bonderman, Davis, Girsky, Isdell, Krebs and Laskaway are collectively referred to herein as the "Individual Defendants."

25.    Defendant Morgan Stanley & Co. Incorporated is an investment bank headquartered at 1585 Broadway, New York, NY 10036.  Morgan Stanley was one of the underwriters for the IPO and agreed to distribute 76,480,000 shares of GM common stock.

26.    Defendant J.P. Morgan Securities LLC is an investment bank with offices at 338 Madison Avenue, New York, NY 10179, was one of the underwriters for the IPO, and agreed to distribute 76,480,000 shares of GM common stock.

27.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated is an investment bank with offices at 250 Vesey Street, New York, NY 10179, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

4

28.     Defendant Citigroup Global Markets Inc. is an investment bank with offices at 388 Greenwich Street, New York, NY 10013, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

29.     Defendant Barclays Capital Inc. is an investment bank with offices at 200 Park Avenue, New York, NY 10166, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

30.     Defendant Credit Suisse Securities (USA) LLC is an investment bank with offices at 11 Madison Avenue, New York, NY 10010, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

31.     Defendant Deutsche Bank Securities Inc. is an investment bank with offices at 60 Wall Street, New York, NY 10005, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

32.     Defendant Goldman Sachs & Co. is an investment bank with offices at 200 West Street, New York, NY 10282, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

33.     Defendant RBC Capital Markets Corporation is an investment bank with offices at 165 Broadway, New York, NY 10006, was one of the underwriters for the IPO, and agreed to distribute 35,508,571 shares of GM common stock.

34.     Defendant Banco Bradesco BBI S.A. is an investment bank with offices at 450 Park Avenue, New York, NY 10022, was one of the underwriters for the IPO, and agreed to distribute 12,547,500 shares of GM common stock.

35.     Defendant CIBC World Markets Corp. is an investment bank with offices at 425 Lexington Avenue, New York, NY, was one of the underwriters for the IPO, and agreed to distribute 12,547,500 shares of GM common stock.

36.     Defendant Commerz Markets LLC is an investment bank with offices at 2 World Financial Center, New York, NY 10281, was one of the underwriters for the IPO, and agreed to distribute 12,547,500 shares of GM common stock.

37.     Defendant BNY Mellon Capital Markets, LLC, is an investment bank with offices at One Wall Street, New York, NY 10286, was one of the underwriters for the IPO, and agreed to distribute 4,331,875 shares of GM common stock.

38.     Defendant ICBC International Securities Limited is an investment bank with offices at 37/F, ICBC Tower, 3 Garden Road, Central, Hong Kong, was one of the underwriters for the IPO, and agreed to distribute 4,331,875 shares of GM common stock.

39.     Defendant Itau BBA USA Securities, Inc. is an investment bank with offices at 767 Fifth Avenue, New York, NY 10153, was one of the underwriters for the IPO, and agreed to distribute 4,331,875 shares of GM common stock.

40.     Defendant Lloyds TSB Bank plc is an investment bank with offices at 25 Gresham Street, London EC2V 7HN, was one of the underwriters for the IPO, and agreed to distribute 4,331,875 shares of GM common stock.

41.     Defendant China International Capital Corporation Hong Kong Securities Limited is an investment bank with offices at 350 Park Avenue, New York, NY 10002, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

42.     Defendant Loop Capital Markets LLC is an investment bank with offices at 200 West Jackson Blvd., Chicago, Illinois 60606, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

43.     Defendant The Williams Capital Group, L.P. is an investment bank with offices at 650 Fifth Avenue, New York, NY 10019, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

44.     Defendant Soleil Securities Corporation is an investment bank with offices at 360 Madison Avenue, New York, NY 10017, was one of the underwriters for the IPO, and agreed to distribute 84,569 shares of GM common stock.

45.     Defendant Scotia Capital (USA) Inc. is an investment bank with offices at 165 Broadway, New York, NY 10006, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

46.     Defendant Piper Jaffray & Co. is an investment bank with offices at 800 Nicollet Mall, Suite 800, Minneapolis, MN 55402, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

47.     Defendant SMBC Nikko Capital Markets Limited is an investment bank with offices at One New Change, London EC4M 9AF, was one of the underwriters for the IPO, and agreed to distribute 2,143,033 shares of GM common stock.

48.     Defendant Sanford C. Bernstein & Co. LLC is an investment bank with offices at 1345 Avenue of the Americas, New York, NY 10105, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

49.     Defendant CastleOak Securities, L.P. is an investment bank with offices at 110 East 59th Street, New York, NY 10105, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

50.     Defendant C.L. King & Associates, Inc. is an investment bank with offices at 9 Elk Street, Albany, NY 12207, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

51.     Defendant FBR Capital Markets & Co. is an investment bank with offices at 1001 Nineteenth Street North, Suite 100, Arlington, VA 22209, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

52.     Defendant Gardner Rich, LLC is an investment bank with offices at 401 South Financial Place, Chicago, IL 60605, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

53.     Defendant Lebenthal & Co., LLC is an investment bank with offices at 521 Fifth Avenue, New York, NY 10175, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

54.     Defendant Muriel Siebert & Co., Inc. is an investment bank with offices at 885 Third Avenue, New York, NY 10022, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

55.     Defendant Samuel A. Ramirez & Company, Inc. is an investment bank with offices at 61 Broadway, Suite 2924, New York, NY 10006, was one of the underwriters for the IPO, and agreed to distribute 847,273 shares of GM common stock.

56.     Defendant Cabrera Capital Markets, LLC is an investment bank with offices at 10 South LaSalle Street, Suite 1050, Chicago, IL 60603, was one of the underwriters for the IPO, and agreed to distribute 600,000 shares of GM common stock.

57.     Defendant CF Global Trading LLC is an investment bank with offices at 527 Madison Avenue, New York, NY 10022, was one of the underwriters for the IPO, and agreed to distribute 334,600 shares of GM common stock.

58.     Defendants in paragraphs 25 through 57 above are collectively referred to as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     BACKGROUND OF GM AND THE IPO

59.     GM was formed by the United States Department of the Treasury in 2009 (the "U.S. Treasury").   On June 8, 2009, General Motors Corporation, the precursor to General Motors Company, along with three of its domestic direct and indirect subsidiaries, filed for bankruptcy under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.   On July 10, 2009, with financing partially provided by the U.S. government, General Motors Company, through certain of its subsidiaries, emerged from reorganization and acquired substantially all the assets of General Motors Corporation.  Upon emergence from bankruptcy, the U.S. Treasury held a 60.8 percent interest in the Company.

60.     In 2010, GM revealed its plan to return to the public stock markets through an initial public offering.  On November 4, 2010, an article in the *USA Today* explained that "[n]ow that General Motors has unveiled its plans to return to the stock market, CEO Dan Akerson's team is revving up efforts to convince investors the stock is worth buying."  The article further

explained that GM was preparing for a "road show" in which executives would be "selling GM's improvements and vowing to fix shortcomings." One such shortcoming that concerned investors was GM's failure to manage inventory, resulting in excessive build-up of unsold product on dealers' lots.

61.     On August 18, 2010, GM filed a Form S-l Registration Statement with the SEC, attempting to register shares of common stock for its IPO. Before the IPO commenced on November 18, 2010, GM filed nine amendments to the Registration Statement, the last one being filed November 17, 2010 (the "Registration Statement").

62.     On November 18, 2010, GM launched the biggest initial public offering in U.S. history (at the time), by which certain selling shareholders, including the U.S. Treasury, offered 478 million shares of common stock at $33 per share (the "IPO"). The IPO raised a record amount of over $23 billion.

### B.     REPORTS OF INVENTORY CONTROL PROBLEMS EMERGE

63.     On July 5, 2011, *Bloomberg* published an article revealing that in the months just prior to the IPO and thereafter, GM already was falling into "old, bad habits" by "channel stuffing," a practice whereby excess inventory is "sold" to dealerships so that the manufacturer, in this case, GM, can record those sales on its books, creating the false appearance of revenues, even while those cars remain unsold on dealer lots. The article stated that GM's truck inventory swelled to 122 days worth of average sales whereas, by comparison, GM's less profitable car inventory was limited to 60 to 70 days of average sales, Ford was maintaining only a 79 day inventory on comparable trucks, and GM's truck inventory during the years 2002-2010 had similarly averaged only 78 days of average sales.

64.     The article quoted an analyst from Jefferies & Co. stating that "[i]t's unbelievable that after this huge taxpayer bailout and the bankruptcy that we are right back to where we were." The analyst further stated, "There's no credibility."

65.     The article also quoted an executive director of global forecasting at J.D. Power & Associates, who stated that even though trucks may require more inventory to meet the demand for different combinations of weight classes, cab types, engines and trim levels, an inventory of over 100, a figure more than 20% less than the 122 average attributed to GM, would be excessive. This expert stated that while a truck supply in the 70s or 80s "isn't considered high . . . When you're north of 100, it suggests there's too much." He added that "[e]ven if you need a lot of variety, that's still pushing it."

66.     Indeed, on July 1, 2011, GM admitted on an investor conference call that it had substantially exceeded inventory targets. An article appearing on *Barron's* on July 5, 2011 quotes Don Johnson, the VP of GM's U.S. sales operations, who stated on an investor call that "[r]ight now we are at 122 day supply on full-size pickups. And this is slightly above where we would like to be. I acknowledge that our target is between 100 and 110 day supply but I think it's important that people realize why we are there and what we may do about it." Thus, GM acknowledged that its target was above the 100 vehicle figure that industry experts considered excessive, and moreover GM exceeded even its own excessive target.

67.     Similarly, a December 1, 2011 post on an investor website suggested that GM's monthly disclosure of car sales was completely irrelevant in light of the huge run-up in dealer inventories, which indicated that production greatly exceeded demand. In fact, GM's month-end dealer inventory in November 2011 reached what was then an all-time high of 623,666 cars, which was 3.5 times the total GM vehicles sold in that month.

68.     As of November 2011, GM dealer inventories were 30 percent higher than they were on September 30, 2010 (the end of the last full quarter before the November 18, 2010 IPO) and 62 percent higher than they were at the end of 2009.   Seemingly undeterred by these statistics, GM's dealer inventories have continued to rise.

### C.     DEFENDANTS' MISREPRESENTATIONS

69.     On November 18, 2010, GM filed a prospectus on Form 424B1 with the Securities and Exchange Commission in connection with the Company's IPO (the "Prospectus"). The Prospectus stated, among other things, that "We aim to increase our vehicle profitability by maintaining competitive incentive levels with our strengthened product portfolio and by actively managing our production levels through monitoring of our dealer inventory levels." *See* Prospectus at p. 6.

70.     This statement was misleading at the time it was made, because GM did not have adequate inventory controls in place and did not monitor dealer inventory levels to ensure that production was consistent with demand.   Instead, in the months following the IPO, GM continued to ramp up production and overload dealerships with excess inventory, which GM then recorded as sales, even though the vehicles remained unsold on dealer lots for longer periods of time.

71.     The Prospectus also stated: "At September 30, 2010 Inventories of $13.0 billion increased by $2.9 billion (or 29.1%), primarily due to: (1) increased production resulting from higher demand for our products and new product launches; and (2) higher inventory levels at September 30, 2010 compared to low levels at December 31, 2009 of $5.9 billion that resulted from the year-end shut-down in certain locations." *See* Prospectus at p. 90.   This was false and misleading, because the increased inventories were the result of channel stuffing and were not

attributable to higher demand.  Indeed, at the time of these statements, dealer inventories were rising and trucks were sitting unsold on dealer lots for longer periods of time.

72.     The Prospectus further stated:

> Management believes that production volume and vehicle sales data provide meaningful information regarding our operating results.  Production volumes manufactured by our assembly facilities are generally aligned with current period net sales and revenue, as we generally recognize revenue upon the release of the vehicle to the carrier responsible for transporting it to a dealer, which is shortly after the completion of production. Vehicle sales data, which includes retail and fleet sales, does not correlate directly to the revenue we recognize during the period. ***However, vehicle sales data is indicative of the underlying demand for our vehicles, and is the basis for our market share.***

Prospectus at p. 74 (emphasis added).

73.     This statement was false and misleading when made, because the increases in vehicle sales data were the result of channel stuffing and were not attributable to higher demand. In addition, the majority of sales reported by GM were based on estimated sales to final customers and not on actual sales data, and therefore, did not accurately reflect underlying demand. *See* Prospectus at p. 75.

### D.     LOSS CAUSATION / ECONOMIC LOSS

74.     Defendants falsely stated in the Prospectus that GM was actively managing production levels through the monitoring of dealer inventory levels, and that increased inventories were attributable to and indicative of higher demand.  Defendants also failed to correct these previous false statements.

75.     The false statements and omissions described above caused GM's stock price to remain artificially inflated.

76.     Starting in July 2011, when the risk inherent in GM's lack of proper inventory controls materialized, GM's share price fell by more than 30%, representing a market cap of in excess of $8 billion.

77.     A March 2012 article in *The Atlantic* blamed the stock price collapse on investor fears that GM had not shaken its former bad habits, including possible channel stuffing.

### CLASS ACTION ALLEGATIONS

78.     This is a class action pursuant to Rules 23(a) and (b)(3) of the federal Rules of Civil Procedure on behalf of a Class of all persons and entities who purchased or otherwise acquired GM stock in the November 18, 2010 Initial Public Offering or on the open market, and were damaged thereby.   Excluded from the Class are (1) GM, and its officers, directors, employees, affiliates, legal representatives, predecessors, successors and assigns, and any entity in which any of them have a controlling interest or are a parent; and (b) all Defendants, their immediate families, employees, affiliates, legal representatives, heirs, predecessors, successors and assigns, and any entity in which any of them has a controlling interest.

79.     The members of the Class are so numerous that joinder of all members is impracticable.  Subsequent to the IPO, GM shares traded on the NYSE under the ticker symbol "GM."  While the exact number of Class members is unknown to Plaintiff at this time and can only be obtained through appropriate discovery, Plaintiff believes that there are thousands of Class members located throughout the United States.  Record owners and other members of the Class may be identified from records maintained by GM and/or its transfer agents and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

80.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  The questions of law and fact common to the Class include (1) whether Defendants violated federal securities laws, namely the Securities Act; (2) whether Defendants omitted and/or misrepresented material facts about GM's inventory that were material; (3) whether the market price of GM stock was artificially inflated due to the material misrepresentations and failures to correct the material misrepresentations complained of herein; and (5) the extent to which members of the Class have sustained damages and the proper measure of any such damages.

81.     Plaintiff's claims are typical of the claims of other Class members, as all members of the Class were similarly affected by Defendants' wrongful conduct in violation of federal law as complained of herein.

82.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel that is competent and experienced in class and securities litigation.  Plaintiff has no interest that is in conflict with, or otherwise antagonistic to the interests of the other Class members.

83.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in management of this action as a class action.

15

## COUNT I

### VIOLATIONS OF SECTION 11 OF THE SECURITIES ACT
### AGAINST ALL DEFENDANTS

84.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein, to the extent such allegations do not allege fraud or the intent to defraud Plaintiff or members of the Class.

85.     This Count does not sound in fraud.   Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count. For purposes of asserting this claim under the Securities Act, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a § 11 claim.

86.     This Count is asserted against all Defendants for violations of § 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all Class members who purchased or otherwise acquired GM stock pursuant or traceable to the November 18, 2010 IPO.

87.     Defendants' liability under this Count is predicated on the participation of each Defendant in conducting the IPO pursuant to the Prospectus, which contained misrepresentations of material fact.

88.     The Prospectus contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as described above. The Individual Defendants were executive officers and representatives of the Company who were responsible for the contents and dissemination of the Prospectus.  Further, the Individual Defendants signed the Prospectus in their official capacity with the Company.

89.     The Underwriter Defendants were all underwriters of the IPO.  As such, these Defendants issued, caused to be issued and participated in the issuance of the Prospectus and are subject to liability for violations of § 11 of the Securities Act.

16

90.     Plaintiff and the other Class members who acquired GM shares pursuant or traceable to the Registration Statement did not know of the false statements and omissions alleged herein and could not have reasonably discovered such facts or conduct.

91.     Less than one year elapsed from the time Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that the first complaint was filed asserting claims arising out of the falsity of the Prospectus.  Less than three years elapsed from the time that the securities upon which this Count is brought were offered to the public to the time that the first complaint was filed asserting claims arising out of the falsity of the Prospectus.

92.     Plaintiff and the other Class members have sustained damages. The value of GM shares have declined substantially subsequent to and due to Defendants' violations of § 11 of the Securities Act.  By reason of the foregoing, Defendants are liable for violations of § 11 of the Securities Act to Plaintiff and the other Class members who purchased or otherwise acquired GM stock pursuant or traceable to the Prospectus.

## COUNT II

### VIOLATIONS OF SECTION 12(a)(2) OF THE SECURITIES ACT
### AGAINST GM AND THE UNDERWRITER DEFENDANTS

93.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein, to the extent such allegations do not allege fraud or the intent to defraud Plaintiff or members of the Class.

94.     This Count is asserted against GM and the Underwriter Defendants for violations of § 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), on behalf of all Class members who purchased or otherwise acquired GM shares pursuant or traceable to the IPO.

95.     This Count does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  For purposes of asserting this claim under the Securities Act, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a § 12(a)(2) claim.

96.     The Underwriter Defendants and GM were sellers, offerors and/or solicitors of sales of the GM shares offered pursuant to the Prospectus.  These offering documents contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

97.     Plaintiff and the other Class members who purchased or otherwise acquired GM shares pursuant or traceable to the materially untrue and misleading offering documents did not know or, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the offering documents.

98.     The Underwriter Defendants and GM owed to Plaintiff and the other Class members who purchased or otherwise acquired GM shares pursuant or traceable to the materially false and misleading offering documents the duty to make a reasonable and diligent investigation of the statements contained in the offering documents, to ensure such statements were true and that there was no omission of material fact necessary to prevent the statements contained therein from being misleading.  The Underwriter Defendants and GM did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the offering documents were true and without omissions of any material facts and were not misleading.  By virtue of the conduct alleged herein, the Underwriter Defendants and GM violated § 12(a)(2) of the Securities Act.

## COUNT III

### VIOLATIONS OF SECTION 15 OF THE SECURITIES ACT
### <u>AGAINST THE INDIVIDUAL DEFENDANTS</u>

99.     Plaintiff repeats and realleges each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein, to the extent such allegations do not allege fraud or the intent to defraud Plaintiff or members of the Class. This Count is asserted against the Individual Defendants for violations of § 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of Plaintiff and the other Class members who purchased or otherwise acquired GM shares pursuant or traceable to the offering documents.

100.    This Count does not sound in fraud.  Any allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count.  For purposes of asserting this claim under the Securities Act, Plaintiff does not allege that Defendants acted with scienter or fraudulent intent, which are not elements of a § 15 claim.

101.    At all relevant times, the Individual Defendants were controlling persons of the Company within the meaning of § 15 of the Securities Act.  Each of the Individual Defendants served as an executive officer or director of GM prior to and at the time of the November 18, 2010 IPO, as set forth above.

102.    Each of the Individual Defendants at all relevant times participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of GM's business affairs. As officers and directors of a publicly owned company listed on the NYSE and registered with the SEC, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GM's financial condition and results of operations.

103.    By reason of the aforementioned conduct, each of the Defendants named in this Count are liable under § 15 of the Securities Act, jointly and severally with, and to the same extent as the Company is liable under §§ 11 and 12(a)(2) of the Securities Act, to Plaintiff and the other Class members who purchased securities pursuant or traceable to the IPO.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.    Declaring this action to be a proper class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and Plaintiff's counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and other members of the Class rescission on their § 12(a)(2) claims;

D.    Awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees and other costs and disbursements; and

E.    Awarding Plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: June 29, 2012                       **STEWARTS LAW US LLP**

                                           By: _David A. Straite_____

                                           DAVID A. STRAITE
                                           RALPH N. SIANNI
                                           MICHELE S. CARINO
                                           535 Fifth Avenue, 4th Floor
                                           New York, NY 10017
                                           Tel.: (212) 897-3730
                                           Fax: (212) 897-3733
                                           *dstraite@stewartslaw.com*

                                           **RYAN & MANISKAS, LLP**
                                           KATHARINE M. RYAN
                                           RICHARD A. MANISKAS
                                           995 Old Eagle School Road, Suite 311
                                           Wayne, PA 19087
                                           Tel.: (484) 588-5516
                                           Fax: (484) 450-2582
                                           *rmaniskas@rmclasslaw.com*

                                           Counsel for Plaintiff George G. Scott

## CERTIFICATION

I, George Scott., ("Plaintiff") declare, as to the claims asserted under the federal securities laws that

1.     Plaintiff has reviewed the complaint and authorizes its filing.

2.     Plaintiff did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.     Plaintiff is willing to serve as a representative party on behalf of the class, either individually or as part of a group, including providing testimony at deposition or trial, if necessary.  I understand that is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4.     Plaintiff's purchase and sale transaction(s) in the **General Motors Company (NYSE: GM)** security that is the subject of this action during the Class Period is/are as follows:

| Type of Security (common stock, preferred, option, or bond) | Number of Shares | Bought | Sold | Date | Price per share |
|---|---|---|---|---|---|
| Common | 200 | B | | 11/18/2010 | $.35.90 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**(Please list additional purchase and sale information on a separate sheet of paper, if necessary)**

5.     Plaintiff has complete authority to bring a suit to recover for investment losses on behalf of purchasers of the subject securities described herein (including Plaintiff, any co-owners, any corporations or other entities, and/or any beneficial owners).

6.     During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws, except as described below_____.

7.     Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of June , 2012.

George Scott