UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE G. SCOTT, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>GENERAL MOTORS COMPANY, et al.,<br><br>　　　　　　　　Defendants. | Civil Action No. 1:12-cv-05124-LTS<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF TEAMSTERS LOCAL 710 PENSION FUND'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL |

759182_1

General Motors Company ("GM" or the "Company") investor and proposed lead plaintiff Teamsters Local 710 Pension Fund ("Local 710") respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (2) approval of its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as lead counsel for the class.

## I.   INTRODUCTION

Presently pending in this district is a securities class action lawsuit brought on behalf of purchasers of the common stock of GM pursuant or traceable to the Company's November 18, 2010 initial public offering (the "IPO" or the "Offering"), against GM, certain of the Company's senior officers and directors and various other entities involved in the IPO,[1] seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

In securities class actions, the PSLRA requires district courts to appoint as lead plaintiff the class member "the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. §77z-1(a)(3)(B)(i).  Local 710 should be appointed as lead plaintiff

---

[1]   Defendants include GM, its directors, Edward E. Whitacre, Jr., Christopher P. Liddell, Nick S. Cyprus, Daniel F. Akerson, David Bonderman, Erroll B. Davis, Jr., Stephen J. Girsky, E. Neville Isdell, Robert D. Krebs, Philip A. Laskaway, as well as the following underwriters: Morgan Stanley & Co. Incorporated, J.P. Morgan Securities LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Citigroup Global Markets Inc., Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., RBC Capital Markets Corporation, Banco Bradesco BBI S.A., CIBC World Markets Corp., Commerz Markets LLC, BNY Mellon Capital Markets, LLC, ICBC International Securities Limited, Itau BBA USA Securities, Inc., Lloyds TSB Bank plc, China International Capital Corporation Hong Kong Securities Limited, Loop Capital Markets LLC, The Williams Capital Group, L.P., Soleil Securities Corporation, Scotia Capital (USA) Inc., Piper Jaffray & Co., SMBC Nikko Capital Markets Limited, Sanford C. Bernstein & Co., LLC, CastleOak Securities, L.P., C.L. King & Associates, Inc., FBR Capital Markets & Co., Gardner Rich, LLC, Lebenthal & Co., LLC, Muriel Siebert & Co., Inc., Samuel A. Ramirez & Company, Inc., Cabrera Capital Markets, LLC and CF Global Trading LLC.

- 1 -

759182_1

because it: (a) timely filed this motion; (b) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (c) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §77z-1(a)(3)(B)(iii). In addition, Local 710's selection of Robbins Geller as lead counsel for the class should be approved. *See* 15 U.S.C. §77z-1(a)(3)(B)(v).

## II.   FACTUAL BACKGROUND

GM designs, manufactures and markets cars, crossover vehicles, trucks and automobile parts worldwide. On June 8, 2009, General Motors Corporation, the precursor to GM, along with three of its domestic direct and indirect subsidiaries, filed for bankruptcy protection under Chapter 11 of the U.S. Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Thereafter, on July 10, 2009, GM emerged from bankruptcy.

In 2010, GM revealed its plan to return to the public equity markets through an initial public offering of the Company's common stock. On November 4, 2010, an article in the *USA Today* explained that "[n]ow that General Motors has unveiled its plans to return to the stock market, CEO Dan Akerson's team is revving up efforts to convince investors the stock is worth buying." The article further explained that GM was preparing for a "road show" in which executives would be "selling GM's improvements and vowing to fix shortcomings." One such shortcoming that concerned investors was GM's failure to manage inventory.

On August 18, 2010, GM filed a Form S-1 Registration Statement with the SEC, attempting to register shares of common stock for its IPO. Before the IPO commenced on November 18, 2010, GM filed nine amendments to the Registration Statement, the last one being filed November 17, 2010 (the "Registration Statement").

On November 18, 2010, GM launched its IPO. At least 478 million shares of GM common stock were sold to the public at $33 per share (358.5 million shares were sold by the U.S.

Department of the Treasury and 119.5 million shares were sold by certain selling shareholders, with an additional 71.7 million shares granted to the underwriters in the over-allotment), raising over $23 billion in gross proceeds (including the over-allotment). It was one of the largest IPOs in U.S. history.

In connection with the IPO, and in order to assuage concerns that GM was predicting revenue based on production rather than actual sales, GM falsely assured investors that it was actively managing its production by monitoring its dealer inventory levels. Additionally, GM assured investors that in 2011 it would improve inventory management, which would improve average transaction price. These statements were, however, false when made. The Prospectus/Registration Statement also failed to disclose that the Company was sending excessive inventory to dealers to inflate its reported results, that the Company's future results would be adversely affected by GM's practice of sending excessive inventory into the channel, and that the Company's future would be affected by inventory levels at dealers.

In July 2011, reports began to surface that GM had engaged in an extraordinary inventory build-up. In particular, an article published by *Bloomberg* on July 5, 2011 revealed that GM may have been unloading excessive inventory on dealers, a practice known as "channel stuffing," in order to create the false impression that GM was recovering and sales and revenues were rising. The *Bloomberg* article stated that GM's truck inventory swelled to 122 days worth of average sales whereas, by comparison, GM's less profitable car inventory was limited to 60 to 70 days of average sales, Ford was maintaining only a 79-day inventory on comparable trucks, and GM's truck inventory during the years 2002-2010 had similarly averaged only 78 days of average sales.

By November 2011, GM dealer inventories were 30% higher than they were on September 30, 2010 – the end of the last full quarter before the IPO on November 18, 2010 – and 62% higher

- 3 -

than they were at the end of 2009. As a result of these and subsequent disclosures, GM's stock declined from more than $31 per share to below $20 per share, representing a 39% decline in the price of GM stock from its IPO.

## III.     ARGUMENT

### A.     Local 710 Should Be Appointed as Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff "in each private action arising under [the Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §77z-1(a)(1); *see also* 15 U.S.C. §77z-1(a)(3)(B)(i). First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint. 15 U.S.C. §77z-1(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person who –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z-1(a)(3)(B)(iii)(I). Local 710 meets these requirements and should therefore be appointed as lead plaintiff.

#### 1.     Local 710's Motion Is Timely

The notice published in this action on July 11, 2012 advised class members of: (a) the pendency of the action; (b) the claims asserted therein; (c) the proposed class period; and (d) the right to move the Court to be appointed lead plaintiff within 60 days of the date of the notice, or by

- 4 -

September 10, 2012.[2]  *See* Declaration of Mario Alba, Jr. in Support of Teamsters Local 710 Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Lead Plaintiff's Selection of Lead Counsel ("Alba Decl."), Ex. A, filed concurrently herewith.  Because Local 710's motion is timely filed, it is entitled to be considered for appointment as lead plaintiff.

### 2. Local 710 Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, Local 710 suffered losses of more than $1.27 million purchasing over 167,500 shares of GM common stock pursuant or traceable to the Company's November 18, 2010 IPO.  *See* Alba Decl., Exs. B-C.  To the best of its counsel's knowledge, there are no other plaintiffs with a larger financial interest.  Therefore, Local 710 satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. Local 710 Satisfies Rule 23 of the Federal Rules of Civil Procedure at This Stage

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §77z-1(a)(3)(B)(iii)(I)(cc).  "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'"  *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (Scheindlin, J.) (citation omitted).  "'Typicality "requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to

---

[2]  Sixty days from July 11, 2012 was September 9, 2012.  September 9, 2012 was a Sunday, however, and, as such, pursuant to Fed. R. Civ. P. 6(a)(1)(C), the "next day that is not a Saturday, Sunday, or legal holiday," is Monday, September 10, 2012.

prove the defendant's liability.'"'" *Id.* at 173-74 (citation omitted).  "'The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class . . . .'" *Id.* at 174 (citation omitted).

Here, Local 710 purchased a substantial amount of GM stock during the Class Period at prices artificially inflated by defendants' materially false and misleading statements and suffered damages when the truth leaked into the market.  Local 710's claims therefore arise from the same factual predicate as those in the complaint.  *See Sgalambo*, 268 F.R.D. at 174.  In addition, Local 710 is not subject to unique defenses and there is no evidence that it seeks anything other than the greatest recovery for the class consistent with the merits of the claims.  As such, Local 710 satisfies the typicality and adequacy requirements at this stage.

## B. Local 710 is Precisely the Type of Lead Plaintiff Congress Envisioned When it Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  As an institutional investor, Local 710 is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA.  *See id.*

### C.     The Court Should Approve Local 710's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. *See* 15 U.S.C. §77z-1(a)(3)(B)(v). The court should not disturb lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §77z-1(a)(3)(B)(iii)(II)(aa). Here, Local 710 has selected Robbins Geller as lead counsel for the class.

Robbins Geller is a 180-lawyer law firm that is actively engaged in complex litigation, emphasizing securities, consumer, and antitrust class actions. *See* Alba Decl., Ex. D. Robbins Geller possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. The firm's lawyers have been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case, and in *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427 (S.D. Tex. 2002). *See* Alba Decl., Ex. D. Robbins Geller attorneys were also responsible for the $925 million recovery in *In re UnitedHealth Group Inc. Sec. Litig.*, No. 0:06-cv-01691 (D. Minn.). Indeed, in approving the lead plaintiff's choice of Robbins Geller's lawyers as lead counsel in *Enron*, the Honorable Melinda Harmon found that its submissions stood "out in the breadth and depth of its research and insight." 206 F.R.D. at 458. Robbins Geller's securities department includes numerous trial attorneys and many former federal and state prosecutors, and utilizes an extensive group of in-house experts to aid in the prosecution of complex securities issues. *See* Alba Decl., Ex. D.

Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Robbins Geller. *See, e.g., Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (Robbins Geller is "a firm

which is well qualified and has successfully served as lead counsel or co-lead counsel in numerous complex securities class actions."). Accordingly, the Court should approve Local 710's selection of counsel.

## IV. CONCLUSION

Local 710 satisfies each of the PSLRA's requirements for appointment as lead plaintiff. Therefore, Local 710 respectfully requests that the Court grant its motion for appointment as lead plaintiff, approve its selection of counsel and grant such other relief as the Court may deem just and proper.

DATED: September 10, 2012                    Respectfully submitted,

>                                            ROBBINS GELLER RUDMAN
>                                              & DOWD LLP
>                                            SAMUEL H. RUDMAN
>                                            DAVID A. ROSENFELD
>                                            MARIO ALBA JR.
>
>                                                   s/ MARIO ALBA JR.
>                                                   MARIO ALBA JR.
>
>                                            58 South Service Road, Suite 200
>                                            Melville, NY  11747
>                                            Telephone:  631/367-7100
>                                            631/367-1173 (fax)
>                                            srudman@rgrdlaw.com
>                                            drosenfeld@rgrdlaw.com
>                                            malba@rgrdlaw.com
>
>                                            ROBBINS GELLER RUDMAN
>                                              & DOWD LLP
>                                            BRIAN O. O'MARA
>                                            655 West Broadway, Suite 1900
>                                            San Diego, CA  92101
>                                            Telephone:  619/231-1058
>                                            619/231-7423 (fax)
>                                            bomara@rgrdlaw.com
>
>                                            [Proposed] Lead Counsel for Plaintiff

- 8 -

CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2012, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 10, 2012.

<div style="margin-left:3em">

s/ MARIO ALBA JR.
MARIO ALBA JR.

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  malba@rgrdlaw.com

</div>

759182_1

# Mailing Information for a Case 1:12-cv-05124-LTS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Michele S. Carino**
  mcarino@stewartslaw.com,nwortman@stewartslaw.com,tschuster@stewartslaw.com

- **Robert J. Kopecky**
  rkopecky@kirkland.com

- **Katharine M. Ryan**
  kryan@rmclasslaw.com,rmaniskas@rmclasslaw.com

- **Ralph Nicholas Sianni**
  rsianni@stewartslaw.com,nwortman@stewartslaw.com,lyork@stewartslaw.com,tschuster@stewartslaw.com

- **David A. Straite**
  dstraite@stewartslaw.com,nwortman@stewartslaw.com,lyork@stewartslaw.com,tschuster@stewartslaw.com

- **Diana M Watral**
  diana.watral@kirkland.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Richard A. Maniskas
Schiffrin & Barroway L.L.P.
280 King of Prussia Road
Radnor, PA 19087
```